UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        v.<br><br>ROBERT L. COLEY,<br><br>                              Defendant. | Criminal Action No. 3:14-CR-102 |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant Robert L. Coley's Motion to Suppress ("Motion") (ECF No. 15). Coley is charged with Possession of a Firearm by a Felon in violation of 18 U.S.C. § 922(g)(1). He moves the Court to suppress all evidence seized and any statements made as a result of the seizure of his person on April 28, 2014. A hearing was held on this matter on September 30, 2014. For the reasons that follow, the Motion to Suppress is DENIED.

**I.   BACKGROUND**

At approximately 2:18 a.m. on April 28, 2014, Officer J.L. Miller was on patrol when he heard a female yelling. He turned his car onto Brooke Road where he noticed a female standing outside of her stopped vehicle. Officer Miller initiated what he described in his report as a traffic stop with his blue lights at the intersection of Adams Street and Brook Road. The female, who was also the driver of the vehicle, told Officer Miller that she and her boyfriend had been arguing during their night out together. She repeatedly stated that she did not need the officer's assistance. There were four male passengers still in the car at this time. While the officer talked with the female, two more patrol units, including Officer Robinson, arrived to assist with the traffic stop.

The reports indicate that Officer Miller observed Coley in the backseat of the vehicle. Coley was acting nervous and avoided eye contact with the officer. Officer Robinson then told

1

Officer Miller that he believed Coley matched the general description of a suspect from an armed robbery that occurred at 1105 St. James Street, in Gilpin Court, earlier that night. Gilpin Court is approximately one mile from the intersection of Brook Road and North Adams Street. Officer Robinson had responded to that armed robbery call. A victim had reported that the robbery suspect was wearing jeans and a white t-shirt.[1]

In the backseat between Coley and another passenger, Officer Miller believed he saw a black nylon object, which he thought to be a holster. However, no black nylon object of any kind was seized from the backseat or from any of the occupants of the vehicle.

Officer Miller then ordered Coley out of the car. Officer Miller noticed that Coley kept moving his hands toward his pockets and waistband area. The officer directed Coley to stop making those movements. Officer Miller then asked Coley if he possessed a weapon; Coley denied that he did. Officer Miller then performed a pat down for officer safety. He felt what he believed to be a handgun in Coley's waistband, and shortly thereafter, Coley fled on foot and was pursued by three officers. During the ensuing chase, an officer reported that he saw Coley toss a dark object over a fence. Coley was then caught and subdued by the officers roughly three blocks away from the original traffic stop. The officers subsequently found a handgun lodged in a chain link fenced in the area where they say Coley threw the dark object.

## II.   LEGAL STANDARD

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. For a seizure to be justified, an "officer must be able to point to specific and articulable facts, which, taken together with rational inferences from those facts,

---

[1] Two armed robberies occurred earlier in the evening in the general vicinity of the traffic stop. One armed robbery, at 1201 W. Clay Street, occurred approximately twenty minutes prior to the traffic stop. West Clay Street is located approximately one mile from where the traffic stop occurred. That robbery suspect was described as a black male, possibly fifteen years of age, approximately 5'7", and possibly 140 pounds. The second armed robbery, which occurred at approximately 12:15 a.m. that morning, was at 1105 St. James Street in Gilpin Court, which is also located approximately one mile from the traffic stop location. That robbery suspect was reported to be wearing jeans and a white t-shirt. The United States argues that Officer Robinson informed Officer Miller of the suspect's description from the St. James Street robbery.

reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). The officer must have a "particularized and objective basis for suspecting" that the defendants are engaged in criminal activity. *United States v. Cortez*, 449 U.S. 411, 417–18 (1981). Similarly, if an officer conducts a "frisk" of the suspect during a seizure, he must have a reasonable and articulable suspicion that the suspect is armed and dangerous. *Terry*, 392 U.S. at 27.

Where a seizure or search is found to be unreasonable, "[e]vidence gathered as fruit of [that] unreasonable search or seizure is generally inadmissible against a defendant," *United States v. Brown*, 401 F.3d 588, 592 (4th Cir. 2005) (citing *Taylor v. Alabama*, 457 U.S. 687, 694 (1982); *Wong Sun v. United States*, 371 U.S. 471, 484–86 (1963)), save for the purpose of impeachment, *Walder v. United States*, 347 U.S. 62, 64–65 (1954). The Government bears the burden of establishing the reasonableness of a search or seizure. *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971).

### III. DISCUSSION

For the following reasons, the Motion to Suppress is DENIED.

#### A. Parties' Arguments

Coley argues that at the time of the seizure Officer Miller lacked the requisite reasonable articulable suspicion to justify a pat-down. According to Coley, Officer Miller merely noticed that Coley was nervous and that there was allegedly a black nylon object between the three passengers in the backseat of the automobile. Furthermore, Coley contends that the general description of an armed robbery suspect wearing a white t-shirt and blue jeans also fails to justify the subsequent pat-down because on any given night, a large number of the Gilpin Court housing community may be African American males wearing white t-shirts. Thus, Coley argues that this description is neither particularized nor objective enough to suspect that Coley would be armed and dangerous on the night in question.

In response, the Government argues that the traffic stop was lawful and the pat-down of the defendant was based on an objectively reasonable concern for officer safety. Specifically, at

the time the officer conducted the pat-down, he knew or had observed the following: (1) the vehicle and its occupants were on the street at 2:18 a.m.; (2) the vehicle was occupied by multiple individuals; (3) the area in which the stop occurred had seen two armed robberies within a 2-hour period, with one of those robberies occurring approximately twenty minutes before the stop; (4) the female driver of the car had been agitated and yelling at the vehicle occupants; (5) Coley appeared nervous and avoided eye contact with the officer; (6) a black piece of nylon that looked like a possible holster was present between Coley's leg and the leg of the passenger next to him; (7) Coley matched the general description of a suspect in an armed robbery; and (8) when Coley exited the car, he made movements with his hands to his waistline and pockets.

### B. Analysis

To resolve this Motion to Suppress, the Court must make several legal and factual determinations, applying different tests. First, the Court must determine at what point Coley was seized within the meaning of the Fourth Amendment and whether Officer Miller possessed reasonable articulable suspicion to justify that seizure. Second, the Court must determine whether reasonable suspicion supported Officer Miller's subsequent frisk of Coley. Third, if the Court determines that the Officer's conduct constituted a violation of the Fourth Amendment, the Court must determine whether and to what extent the evidence gathered after the constitutional violation must be suppressed.

*1. The Initial Traffic Stop Was Supported by Reasonable Suspicion*

The Fourth Amendment's protection against unreasonable seizures does not extend to all encounters between citizens and police. "As a general matter, law enforcement officers do not effectuate a detention or seizure 'merely by approaching individuals on the street or in other public places and putting questions to them.'" *United States v. Jones*, 678 F.3d 293, 299 (4th Cir. 2012) (quoting *United States v. Drayton*, 536 U.S. 194, 200 (2002)). However, "when the

officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen . . . a 'seizure' has occurred." *Terry*, 392 U.S. at 19 n.16.

"[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 439 (1991). The Fourth Circuit has adopted the objective test set forth in *United States v. Mendenhall*, 446 U.S. 544 (1980) (plurality opinion), which asks whether, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." 446 U.S. at 554; *see also United States v. Gray*, 883 F.2d 320, 322 (4th Cir. 1989). This test considers a number of non-exclusive factors including "the number of police officers present during the encounter, whether they were in uniform or displayed their weapons, whether they touched the defendant, whether they attempted to block his departure or restrain his movement, whether the officers' questioning was non-threatening, and whether they treated the defendant as though they suspected him of illegal activity rather than treating the encounter as 'routine' in nature." *Jones*, 678 F.3d at 300 (quoting *Gray*, 883 F.2d at 322–23) (internal quotation marks omitted).

With regards to traffic stops, the Supreme Court has held that not only is the driver seized, but all the passengers in the vehicle are also seized for purposes of the Fourth Amendment. *Brendlin v. California*, 551 U.S. 249, 257 (2007). A reasonable person would not feel free to leave from the "physical focal point of an investigation into faulty behavior or wrongdoing." *Id.* "If the likely wrongdoing is not the driving, the passenger will reasonably feel subject to suspicion owing to close association." *Id.* A reasonable person would know that any attempt to leave the scene would likely prompt an objection from the officer, and thus no passenger would feel free to leave in the first place. *Id.*

In order to justify a seizure, an officer must have reasonable articulable suspicion that

5

criminal activity may be afoot. *Terry*, 392 U.S. at 30. Reasonable suspicion requires more than a hunch but less than probable cause. *Illinois v. Wardlow*, 528 U.S. 119, 123–24 (2000). In determining whether reasonable suspicion exists, courts look to the "'totality of the circumstances' of each case to see whether the [law enforcement official] has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Cortez*, 449 U.S. at 417–18). Reasonable suspicion is a "commonsensical proposition" that gives due weight to the experience of law enforcement officials who observe what transpires on the street. *United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993).

First, in this case, Coley, as well as the driver and other passengers of the vehicle, were clearly seized when Officer Miller initiated the traffic stop. *See Brendlin*, 551 U.S. at 257. Secondly, the parties do not dispute, nor does the Court find any reason to dispute, the lawfulness of the initial traffic stop. A female was yelling and standing outside of her stopped vehicle, which was parked in a driving lane at a stop sign at 2:18 a.m. Based on the totality of the circumstances, no reasonable officer would carry on with his normal business and ignore this suspicious activity. Reasonable suspicion was undoubtedly present to justify the traffic stop.

2. *Officer Miller Possessed the Requisite Reasonable Articulable Suspicion to Justify the Frisk*

During a seizure, a law enforcement official may conduct a "frisk," or a brief pat-down of the suspect's outer layer of clothing for weapons in order to protect his safety and the safety of others. *See Terry*, 392 U.S. at 28. However, before conducting the frisk the officer must have reasonable articulable suspicion that the suspect subject to the frisk is armed and dangerous. *Id.* at 27. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* Again, the officer is entitled to draw a reasonable inference from the facts in light of his experience. *Id.*

In this case, Officer Miller possessed reasonable and articulable suspicion that Coley was armed and dangerous, thus justifying the frisk. Officer Miller initiated the traffic stop at 2:18 a.m. He observed Coley in the backseat of the vehicle. Coley appeared nervous, breathing heavily, and avoided making eye contact with the officer. Officer Miller also believed that he saw a black nylon object in the backseat, which he thought was possibly a holster. This black object was lying between Coley's leg and the leg of another passenger. Officer Robinson then told Officer Miller that he believed Coley fit the description of a suspect from an armed robbery that had occurred in the area earlier that morning. When Coley reluctantly exited the vehicle after being ordered to do so by Officer Miller, Coley immediately adjusted his pants, put his hands in his pockets, and continued to fidget with his waistband after being instructed not to do so.

As stated above, the law does not require that an officer be certain that an individual is armed; rather, the Court must look to whether a reasonably prudent person would be warranted in the belief that his safety was in danger. *Terry*, 392 U.S. at 28. When the aforementioned circumstances are coupled with the fact that the traffic stop was in a high-crime area in which two armed robberies within a 2-hour period had just occurred, a reasonable officer would be justified in conducting a pat-down for officer safety. Coley attempts to cherry-pick the circumstances by identifying each condition individually. However, the case law is clear that reasonable suspicion is based on the totality of the circumstances, and when the totality is considered, the Court finds that Officer Miller possessed the requisite reasonable suspicion. For that reason, the Motion to Suppress is DENIED.

3. *No Evidence is Suppressed*

The Supreme Court has made clear that both tangible evidence and verbal statements obtained or made as the result of an unlawful search cannot be used as proof against a defendant whose constitutional rights were violated by that search. *Wong Sun*, 371 U.S. at 484–85. Because the Motion to Suppress is denied, the evidence obtained shall not be excluded at trial.

### IV. **CONCLUSION**

For the foregoing reasons, Coley's Motion to Suppress is DENIED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order will issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this  6th   day of October 2014.