IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.  Criminal No. **3:14CR102**

**ROBERT L. COLEY,**

    Petitioner.

## MEMORANDUM OPINION

Robert L. Coley, a federal inmate proceeding *pro se*, filed this 28 U.S.C. § 2255 Motion to vacate, set aside, or correct his sentence for Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1). ("§ 2255 Motion," ECF No. 80.) Coley contends that he is entitled to relief upon the following grounds:[1]

| | |
|---|---|
| Claim One | "Counsel was ineffective" (*id.* at 4) because she: |
| | (a) "was not allowed to re-cross examine" a government witness (ECF No. 81, at 17–20); |
| | (b) "stated that she was not properly prepared for [a pre-trial] hearing" (*id.* at 20–21); |
| | (c) failed to challenge Coley's prior conviction on appeal under *Johnson*[2] (*id.* at 21–22); |
| | (d) "abandon[ed] a viable defense [under *Terry*[3]] at the pre-trial motions hearing" (*id.* at 22–27); |
| | (e) "failed to properly test the prosecution's case against [Coley]" (*id.* at 27–30); |
| | (f) committed "multiple errors" which had a negative "cumulative impact" on Coley's "pre-trial, trial, and appellate proceedings" (*id.* at 30–31). |

---

[1] The Court employs the pagination assigned by CM/ECF docketing system to the parties' submissions. The Court corrects the capitalization, punctuation, and spelling in the quotations from Coley's submissions.

[2] *Johnson v. United States*, 576 U.S. 591 (2015).

[3] *Terry v. Ohio*, 392 U.S. 1 (1968).

|  |  |  |
|---|---|---|
| Claim Two | | The Government committed "prosecutorial misconduct" (ECF No. 80, at 5) by "leading" witnesses and/or mischaracterizing their testimony at the suppression hearing and trial. (ECF No. 81, at 2–15.) |

The Government filed a Response asserting that Coley's claims lack merit and are, in part, procedurally defaulted. (ECF No. 86.) Coley filed a Reply. (ECF No. 95.)

Coley also filed a Motion to Amend and Supplement the Record pursuant to Rule 15 of the Federal Rules of Civil Procedure. ("Motion to Amend," ECF No. 96.) In his Motion to Amend, Coley contends that his conviction and sentence must be vacated based upon the Supreme Court's recent decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). (ECF No. 97, at 7.) The Government filed a Response. (ECF No. 102.) Coley filed a Reply. (ECF No. 103.)

For the reasons stated herein, Coley's § 2255 Motion (ECF No. 80) will be DENIED. Claims One (a)–(f) will be DISMISSED because Coley has failed to demonstrate that he received ineffective assistance of counsel. Claim Two is procedurally defaulted and will be DISMISSED. Coley's Motion to Amend (ECF No. 96) will be taken under advisement.

## I. PROCEDURAL HISTORY

On August 5, 2014, the grand jury indicted Coley for Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1). (ECF No. 1.) Coley, through his attorney, filed a Motion to Suppress. (ECF No. 15.) On September 30, 2014, the Honorable James R. Spencer presided over a hearing on the matter. (ECF No. 22.) In denying the Motion to Suppress, the Court provided the following summary of the evidence:

> At approximately 2:18 a.m. on April 28, 2014, Officer J.L. Miller [of the Richmond Police Department] was on patrol when he heard a female yelling. He turned his car onto Brook[] Road where he noticed a female standing outside of her stopped vehicle. Officer Miller initiated what he described in his report as a traffic stop with his blue lights at the intersection of Adams Street and Brook Road. The female, who was also the driver of the vehicle, told Officer

2

> Miller that she and her boyfriend had been arguing during their night out together. She repeatedly stated that she did not need the officer's assistance. There were four male passengers still in the car at this time. While the officer talked with the female, two more patrol units, including Officer Robinson, arrived to assist. . . .
>
> The reports indicate that Officer Miller observed Coley in the backseat of the vehicle. Coley was acting nervous and avoided eye contact with the officer. Officer Robinson then told Officer Miller that he believed Coley matched the general description of a suspect from an armed robbery that occurred at 1105 St. James Street, in Gilpin Court, earlier that night. Gilpin Court is approximately one mile from the intersection of Brook Road and North Adams Street. Officer Robinson had responded to that armed robbery call. A victim had reported that the robbery suspect was wearing jeans and a white t-shirt.
>
> In the backseat between Coley and another passenger, Officer Miller believed he saw a black nylon object, which he thought to be a holster. However, no black nylon object of any kind was seized from the backseat or from any of the occupants of the vehicle.
>
> Officer Miller then ordered Coley out of the car. Officer Miller noticed that Coley kept moving his hands toward his pockets and waistband area. The officer directed Coley to stop making those movements. Officer Miller then asked Coley if he possessed a weapon; Coley denied that he did. Officer Miller then performed a pat down for officer safety. He felt what he believed to be a handgun in Coley's waistband, and shortly thereafter, Coley fled on foot and was pursued by three officers. During the ensuing chase, an officer reported that he saw Coley toss a dark object over a fence. Coley was then caught and subdued by the officers roughly three blocks away from the original traffic stop. The officers subsequently found a handgun lodged in a chain link fenced in the area where they say Coley threw the dark object.

(ECF No. 23, at 1–2 (footnote omitted).) Judge Spencer concluded that "Officer Miller possessed the requisite [level of] suspicion" to justify his actions and denied Coley's Motion. (*Id.* at 7–8.)

At trial, the Government called Officer Miller and Officer Livengood of the Richmond Police Department to testify about their encounter with Coley. Officer Livengood, who had chased Coley after he fled from Officer Miller, described seeing Coley "slow[] down . . . and . . . dig into . . . the front of his pants," after which Coley made a "two-handed throwing motion."

3

(ECF No. 74, at 143–44.) Officer Livengood saw Coley throw an "L-shaped object," that was the "size and shape of a firearm," and observed the trajectory of its flight as it left Coley's hand. (*Id.* at 144.) After Coley was apprehended, Officer Livengood and his colleagues went to the area where Livengood "saw [Coley] throw the weapon," and found the gun "stuck in a chain-link fence," "approximately seven feet in the air." (*Id.* at 146–47.) Officer Livengood testified that he was "positive," that he had seen "a gun fly from [Coley's] hands." (*Id.* at 159.)

Coley stipulated in writing, *inter alia*, that had been convicted of a felony prior to his encounter with Officer Miller and "his right to possess a firearm ha[d] not been restored." (ECF No. 37, at 1.)[4] Coley also testified that he had been convicted of a felony and was "on probation for that felony" at the time Officer Miller arrested him. (ECF No. 74, at 206.) Coley testified that he was nervous when he saw the officers because he was concerned about getting a probation violation. (*Id.* at 205, 216–17.) Coley indicated that he ran because he did not like the way Officer Miller frisked him. (*Id.* at 209–210, 219.) Coley testified that he did not hear Officer Miller announce "Gun," as he patted him down, and that the officers did not say "stop," or anything else, as he ran away, though he knew that were chasing behind him. (*Id.* at 211, 213, 221–22.) Coley denied possessing a firearm or making any sort of throwing motion. (*Id.* at 211, 217, 223.)

On November 4, 2014, the jury found Coley guilty of Possession of a Firearm by a Convicted Felon. (ECF No. 50.) A Presentence Investigation Report ("PSR") was generated, which assigned Coley a Criminal History Category of IV, a Total Offense Level of 28, and which yielded a Restricted Guidelines Range between 110 and 120 months of imprisonment. (ECF No. 57, at 20, 22.) Neither Coley nor the Government objected to the PSR. (*Id.* at 22.)

---

[4] Coley has three felony juvenile adjudications for Robbery, Use of a Firearm in a Felony and Possession of Cocaine, two state court felony convictions for Possession of Cocaine and Attempting to Elude Police, and a federal conviction for Possession of Cocaine Base with Intent to Distribute. (ECF No. 57, at 6–7, 8–10, 11–12.)

4

On February 11, 2015, Coley returned to Court for his sentencing. (ECF No. 72.) Several family members appeared to support Coley, including his mother, father, two aunts, two sisters, and his girlfriend. (*Id.* at 5.) Counsel, without any objection from the Government, proffered that they would testify that he was a "good man," who was working and "making improvements in his life." (*Id.* at 5–6.) Counsel also admitted two letters on Coley's behalf attesting to his character. (*Id.* at 7–8.)

The Government argued for a sentence of 120 months of imprisonment. (*Id.* at 8.) Counsel argued for a variance from the guidelines and asked the Court to sentence Coley to only 77 months of imprisonment. (*Id.* at 17, 23, 26–27.) Ultimately, the Court denied Coley's motion for a variance, explaining that he had engaged in a "lifetime of crime," and sentenced him to 120 months of imprisonment. (*Id.* at 35.)

Coley appealed. (ECF No. 64.) Coley challenged the denial of his suppression motion that "challenged the protective weapons frisk that preceded his arrest." (ECF No. 75, at 2.) The United States Court of Appeals for the Fourth Circuit affirmed this Court's judgment. (*Id.* at 3.) Coley subsequently filed the § 2255 Motion (ECF No. 80) that is presently before the Court.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show

5

that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### A. Claim One (a)

On direct examination, Officer Miller testified that he and Officer Livengood and a third officer chased Coley after he fled. (ECF No. 74, at 83.) Officer Livengood was the closest to Coley. (*Id.* at 84.) From his vantage point, Officer Miller described seeing Coley make a "two-handed throwing motion," and seeing "an object" leave his hand. (*Id.* at 84–85.)

The Government subsequently called Special Agent Bradley to testify. (*Id.* at 160.) On cross-examination, counsel asked Special Agent Bradley about some notes that he had taken regarding a prior conversation that he had with Officer Miller. (*Id.* at 173–74.) The notes indicated that Special Agent Bradley understood Officer Miller to say that he saw Coley make a "throwing motion but didn't see the object" that he threw. (*Id.* at 174.)

On re-direct, the Government showed Special Agent Bradley an email that he had written a few days before the notes he had been asked about on cross-examination. (*Id.* at 175–76.) In that email, Special Agent Bradley wrote "Officer Miller said he never lost sight of Coley when Coley took off running. He saw Coley toss the firearm and it actually became lodged in a chain-link fence." (*Id.* at 177 (emphasis omitted).) Special Agent Bradley admitted that when he took the notes in question, he could have made a mistake. (*Id.* at 175.)

In Claim One (a), Coley argues that his attorney was ineffective because she "was not allowed to re-cross examine . . . [Special] Agent Bradley." (ECF No. 81, at 17.) Coley's choice

6

of words in this instance is curious. As the Government points out, Coley seems to indicate that the Court prevented counsel from asking Special Agent Bradley additional questions. (ECF No. 86, at 11–12.) This was not the case. Counsel did not seek leave to "re-cross" Special Agent Bradley, and the Court made no ruling prohibiting it. Affording Coley the benefit of liberal construction, the Court construes this claim to allege that counsel was deficient because she did not seek to "re-cross" Special Agent Bradley about the email. However, even when recast in this light, Coley's claim nevertheless remains wanting.

The purpose of counsel's questions to Special Agent Bradley about his notes was clearly to impeach Officer Miller's testimony by suggesting that he had made a prior potentially inconsistent statement. Counsel ably made that point. Thus, Coley fails to show that counsel was deficient in her performance.

The fact that the Government was able to mitigate the impact of counsel's attack somewhat by pointing to a prior seemingly consistent statement does not indicate that defense counsel was derelict in her duties. Quite the opposite, the result of this exchange was that one of the Government's witnesses admitted that he may have made a mistake; a win by any measure, even if the witness impeached was not the one that defense counsel initially set out to attack. Coley does not even specify what question(s) he believes counsel should have asked on "re-cross," much less show that additional questioning would have yielded a different result.

Moreover, the point that defense counsel was attempting to make—that there may have been some discrepancies about what Officer Miller saw from his vantage point—was of marginal significance. Officer Miller was one of three officers chasing Coley that night. Officer Livengood was closer to Coley than was Officer Miller, and presumably had a better vantage point. Officer Livengood explicitly testified that he was "positive" that he saw a "gun fly from [Coley's] hands."

(ECF No. 74, at 159.) The line of questioning about Officer Miller's putative prior statements, as reflected in Special Agent Bradley's notes and his email, did nothing to impugn the testimony of Officer Livengood. Thus, Coley fails to demonstrate any prejudice. Accordingly, Claim One (a) lacks merit and will be DISMISSED.[5]

### B. Claim One (b)

In Claim One (b), Coley alleges that his attorney was ineffective because she "stated that she was not properly prepared for the [Motion *in Limine*] hearing."[6] (ECF No. 80, at 20.) Coley misconstrues counsel's comments to the Court.

Following the denial of his Motion to Suppress, Coley filed a Motion *in Limine* to preclude any mention of two robberies that had been reported to Richmond Police prior to Coley's interaction with Officer Miller. (ECF No. 34.) At the hearing on the Motion, counsel pointed out that the "background or factual section" of her Motion had been "abbreviated," because the Motion had been "written for Judge Spencer, who was the presiding judge of the motion to suppress where all of this information came from." (ECF No. 71, at 3.) Counsel offered to "fill in . . . the . . .

---

[5] Coley states that "to his knowledge," his attorney was not given a copy of Special Agent Bradley's email prior to trial. (ECF No. 81, at 19.) As the Government points out, Coley has offered no evidence to support this belief. (ECF No. 86, at 12 n.2.) Moreover, defense counsel's performance in court gave no indication of unfamiliarity with the subject matter. As soon as the Government attempted to have Special Agent Bradley read the email, Coley's attorney objected to specific portions of the email being read on hearsay grounds. (ECF No. 74, at 175–76.) Consequently, the Government limited its questions to a small passage of the email. (*Id.* at 176.) Notably, defense counsel neither objected on the grounds that the email constituted unfair surprise, nor did she show any reticence to proceeding with the examination of Special Agent Bradley. If Coley believes that the Government failed in its discovery obligations, that issue should have been, but was not, raised on direct appeal and would be barred from review here. *See infra* Part III.

[6] In his brief, Coley characterizes the hearing in question as the "the suppression hearing." (ECF No. 80, at 20.) However, it is clear to the Court from the allegations that Coley makes that he is referring to comments defense counsel made at a hearing on his Motion *in Limine*, not at the hearing on his Motion to Suppress.

8

details," for the undersigned. (*Id.* at 4.) However, the Court had "read Judge Spencer's decision on the suppression motion," and was sufficiently "familiar with the facts of the case." (*Id.*) The Court then heard arguments as to the merits of the Motion. (*Id.* at 4–10.) Ultimately, the Court found that the "prejudicial effect of the evidence of the robberies outweighs its probative value," and precluded the Government from introducing any mention of the robberies in their case-in-chief. (*Id.* at 10–12.)

When counsel filed the Motion *in Limine*, Judge Spencer was the presiding judge. Because he had already heard extensive testimony concerning the facts of the case and wrote a detailed Memorandum Opinion making certain factual findings (ECF No. 23), it was not inappropriate for counsel to streamline her submission in the interest of judicial economy. The Court, on its own motion, reassigned the case after counsel had filed her motion. (ECF No. 42.) Counsel had no voice in this action. When counsel learned that the undersigned would be presiding over the Motion, she appropriately offered to "fill in . . . the . . . details" for the Court. (ECF No. 71, at 4.) Nothing about this exchange indicates that counsel was unprepared for the hearing. Thus, Coley has failed to demonstrate that counsel was deficient.

Coley has also failed to demonstrate any prejudice. Most notably, counsel succeeded in having the evidence in question excluded from the Government's case-in-chief. Accordingly, Claim One (b) lacks merit and will be DISMISSED.

**C. Claim One (c)**

In Claim One (c), Coley argues that appellate counsel should have raised *Johnson v. United States*, 576 U.S 591 (2015), to challenge the determination that one of his state felony convictions was a "crime of violence" in the calculation of his guidelines. (ECF No. 80, at 21.) Coley readily admits that this argument is now "precluded" by the Supreme Court's more recent decision in

9

*Beckles v. United States*, 137 S. Ct. 886 (2017). (*Id.* at 22.) However, he argues that during the period after *Johnson* was decided, but before *Beckles*, there was a window where Fourth Circuit "most likely" would have sided with him and reduced his guidelines range. (*Id.* at 21.)

In *Johnson*, the Supreme Court held that the "residual clause" of the Armed Career Criminal Act of 1984 ("ACCA") was "unconstitutionally vague." *Beckles*, 137 U.S. at 890. In *Beckles*, the Supreme Court considered whether the "residual clause" found in the "advisory Sentencing Guidelines," suffered from the same issue. *Id.* The Supreme Court "h[e]ld that the advisory Guidelines are not subject to vagueness challenges . . . ." *Id.*

Coley's claim fails for a number of reasons. As an initial matter, *Johnson* had not been decided at the time appellate counsel filed Coley's "Brief of the Appellant" in the Fourth Circuit.[7] More importantly, even if *Johnson* had been decided at that time, Coley was not sentenced under the ACCA. As the Supreme Court's decision in *Beckles* illustrates, *Johnson* is inapplicable in this instance because Coley was sentenced under the advisory Guidelines. Given the obvious fact that *Johnson* dealt with an entirely different statutory scheme, it was a reasonable strategic decision for counsel to focus the Fourth Circuit's attention on the suppression issues that were raised on appeal, as those arguments represented a higher probability of success. *See Burch*, 273 F.3d at 588 (noting that a convicted defendant must overcome a "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance'") (citation omitted). In any event, Coley has failed to show that appellate counsel was deficient.

Coley has also failed to demonstrate that he suffered prejudice. Any hope that the Fourth Circuit would have wrongly extended *Johnson* to Coley's case, thereby awarding him an

---

[7] Coley filed his appellate brief in the Fourth Circuit on June 15, 2015. *United States v. Coley*, No. 15–4087, ECF No. 19, at 40 (4th Cir. June 15, 2015). The Supreme Court did not decide *Johnson* until June 26, 2015. *Johnson*, 576 U.S. at 591.

undeserved windfall, is purely speculative. Moreover, the Supreme Court has expressly held that "in judging prejudice and the likelihood of a different outcome, '[a] defendant has no entitlement to the luck of a lawless decisionmaker.'" *Lockhart v. Fretwell*, 506 U.S. 364, 370–71 (1993) (citations omitted) (alterations in original) (rejecting argument that counsel's failure to make an objection based upon a decision that was subsequently overruled constituted prejudice). Accordingly, Claim One (c) lacks merit and will be DISMISSED.

### D. Claim One (d)

In Claim One (d), Coley posits that Officer Miller had concluded his dealings with Tia Thomas, the female who had been yelling in the street, before the other officers arrived and before Coley was patted down. (ECF No. 81, at 24–25.) On that basis, Coley argues that Officer Miller improperly extended the roadside detention of Thomas, Coley, and their companions, which ultimately resulted in a violation of his rights under *Terry v. Ohio*, 392 U.S. 1 (1968). (*Id.*) Coley argues that his attorney "abandoned" this "viable defense," which he maintains "should have been presented" at his "suppression hearing, at trial, and on appeal." (*Id.* at 25.)

As an initial matter, the Court notes that Thomas testified as a defense witness at both Coley's suppression hearing (ECF No. 31, at 65–96) and at his trial (ECF No. 74, at 194–202). Having reviewed the transcripts of both hearings, it is clear to the Court that Officer Miller's dealings with Thomas were not concluded as quickly as Coley contends. At trial, Thomas testified that she was sitting in the back of a police vehicle with the door closed while Officer Miller patted Coley down.[8] (ECF No. 74, at 201.) As such, the factual premise underlying Coley's argument is fatally flawed. Thus, counsel was not deficient for failing to raise this issue.

---

[8] On cross-examination, the Government asked Thomas if she heard Officer Miller announce "Gun," as he patted Coley down. (ECF No. 74, at 200.) Thomas said she did not hear him say that and explained that she was in the back of a police car with the door shut and could "not really" hear what was going on outside. (*Id.* at 201.)

11

Even if the Court were to ignore this obvious hole in Coley's argument and indulge his belief that counsel should have pursued this line of defense further, Coley fails to demonstrate why this argument would have had a meaningful impact on the result of his trial. Coley was not seized when he fled from Officer Miller. *California v. Hodari D.*, 499 U.S. 621, 626, 629 (1991) (holding that a seizure does not occur where a subject does not yield to an officer's show of authority or application of force). When Coley threw his firearm in mid-flight it was not the fruit of a seizure. *Id.* at 629 (finding that property abandoned during flight from police was not "fruit of a seizure"). Thus, the firearm that was recovered would not have been suppressed in any event. When viewed in conjunction with Officer Livengood's unequivocal testimony that he was "positive" that he had seen "a gun fly from [Coley's] hands" as Coley ran away (ECF No. 74, at 159), Coley cannot show prejudice. Accordingly, Claim One (d) lacks merit and will be DISMISSED.

### E. Claim One (e)

In Claim One (e), Coley posits that counsel "failed to properly test the prosecution's case against [Coley] with a meaningful adversarial testing." (ECF No. 81, at 27.) While this statement, in and of itself, is so broad that it is virtually meaningless, it is clear from the related allegations Coley makes that Claim One (e) is little more than a continuation of Claim One (d). (*Id.* at 27–30.) Coley restates his claim that counsel was ineffective because she "abandoned" the "viable defense" that Officer Miller impermissibly extended the traffic stop. (*Id.* at 30.) He also adds the allegations that, at the suppression hearing, counsel failed to:

(1) use "dispatch[] transcripts" to attack Officer Miller's version of events;

(2) mention that Thomas was not given a traffic citation; and

(3) mention that Thomas had requested to leave and was not allowed to depart.

(*Id.* at 29.)

12

Coley's citation to "dispatch[] transcripts," adds little to the discussion. While it is clear that Coley believes his attorney erred by failing to incorporate them into her argument, Coley does not provide a copy of any "dispatch[] transcripts," nor does he specify what information he believes they may contain that might influence the Court's analysis of this matter. Consequently, the addition of this allegation does nothing to move the needle in Coley's direction. *See Sanders v. United States*, 373 U.S. 1, 19 (1963) (finding denial of § 2255 motion appropriate where it "stated only bald legal conclusions with no supporting factual allegations").

Similarly, Coley's reliance upon the allegation that Thomas was not given a traffic citation does nothing to change the relevant calculus. Assuming that Coley's assertion is correct, Coley does not articulate what legal significance it has to this matter, or how it would tilt the Fourth Amendment analysis in his favor.

Moreover, the fact that Ms. Thomas may have requested to leave the scene at some point is ultimately irrelevant. Insofar as Coley is concerned, the only relevant inquiry is whether the requisite level of suspicion existed to detain and frisk him. (ECF No. 23, at 7–8.) Coley has failed to show how Thomas's subjective desire to leave alters that analysis. Consequently, Coley has failed to show that counsel was deficient for failing to raise these meritless arguments.

Coley has likewise failed to show that he suffered any prejudice. As discussed above, the firearm that Coley abandoned during his flight would not have been suppressed in any event. *See Hodari D.*, 499 U.S. at 626, 629. When viewed in conjunction with Officer Livengood's unequivocal testimony about seeing a gun leave Coley's hand, Coley has again failed to carry his burden. Accordingly, Claim One (e) lacks merit and will be DISMISSED.

### F. Claim One (f)

In Claim One (f), Coley posits that his attorney's "multiple errors" and "multiple deficiencies throughout the pre-trial, trial and appellate process" had a negative "cumulative impact" that resulted in "prejudice . . . sufficient to vacate [Coley's] conviction and/or sentence." (ECF No. 81, at 30.) Unfortunately for Coley, the cumulative analysis that Coley advances is not permitted here, because the Court has rejected Coley's assertions that counsel performed deficiently. *See Fisher v. Angelone*, 163 F.3d 835, 852–53 (4th Cir. 1998). Indeed, an attorney's "acts or omissions 'that are not unconstitutional individually cannot be added together to create a constitutional violation.'" *Id.* (quoting *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996)). Accordingly, Claim One (f) lacks merit and will be DISMISSED.

## III. PROCEDURAL DEFAULT

In Claim Two, Coley alleges that the Government committed "prosecutorial misconduct" (ECF No. 80, at 5) by "leading" witnesses and/or mischaracterizing their testimony at the suppression hearing and trial. (ECF No. 81, at 2–15.) The Government correctly points out that, because Coley could have raised, but failed to raise, this claim on direct appeal, it is barred from review here, absent a showing of cause and prejudice or actual innocence. *See Bousley v. United States*, 523 U.S. 614, 622–23 (1998). Coley has failed to show that cause and prejudice exist to excuse his default, much less that he is actually innocent of being a felon in possession of a firearm.[9] Accordingly, Claim Two is defaulted and will be DISMISSED.

---

[9] Coley fails to assert any reason why this claim was not raised on direct appeal. Thus, because he fails to show cause, the Court need not address prejudice. *See Breard v. Pruett*, 134 F.3d 615, 620 (4th Cir. 1998). Moreover, Coley fails to establish that he is actually innocent. To establish actual innocence, Coley must demonstrate "factual innocence, not mere legal insufficiency of his conviction." *Bousley*, 523 U.S. at 623–24 (citation omitted); *United States v. Mikalajunas*, 186 F.3d 490, 494 (4th Cir. 1992) (indicating that a petitioner must establish "actual factual innocence"). To the extent that Coley even contends that he is actually innocent, his arguments are based on the facts underlying his meritless Sixth Amendment claims that the Court

## IV. MOTION TO AMEND

In his Motion to Amend (ECF No. 96), Coley contends that his conviction and sentence must be vacated based upon the Supreme Court's recent decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). (ECF No. 97, at 7.) In *Rehaif*, the Supreme Court held that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200. The Government contends that because Coley did not raise the issue on direct appeal any claim under *Rehaif* would be procedurally defaulted and barred from review here. (ECF No. 106, at 3–6.) At this juncture, the Court will take Coley's Motion to Amend (ECF No. 96) under advisement.

## V. CONCLUSION

Coley's § 2255 Motion (ECF No. 80) will be DENIED. Coley's claims will be DISMISSED. The Court will take Coley's Motion to Amend (ECF No. 96) under advisement.

An appropriate Order shall accompany this Memorandum Opinion.

It is so ORDERED.

Date: 22 February 2021
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge

---

has already rejected. Thus, at most, he argues nothing more than the purported legal insufficiency of his convictions. Moreover, Coley fails to identify, except in the most conclusory of terms, exactly how the prosecutor's conduct impacted the resolution his case. Accordingly, even if the Court were to examine Claim Two, it would fail.

15